AD3905




**Tyler Mechanical Contracting, Inc.**
**DC Division**
729 15TH Street, NW
Suite 600
Washington, DC 20005
Tele: (202) 737-2241
Fax: (202) 737-2140

# SUBCONTRACT

This Subcontract is made as of the **24th** day of **October**, 2003 between **TYLER MECHANICAL CONTRACTING, INC., D.C. DIVISION** (hereinafter, "Contractor"), and the Subcontractor: **C.M.C. Sheet Metal, Inc.** (hereinafter, "Subcontractor"). This Subcontract is a second-tier subcontract entered into for purposes of construction of **Old State Build-Out** (hereinafter, "the Project"). The "Owner" of the Project is **General Services Administration, NCR 7th & D Streets, NW – Washington, DC 20406.** The Owner has entered into a prime contract (hereinafter, "the Prime Contract") with **Sigal Construction Corporation** (hereinafter, "the Prime Contractor") for construction of the Project. The Prime Contractor has in turn entered into a first-tier subcontract with Contractor for performance of a portion of the work of the Prime Contract (hereinafter, "the First-Tier Subcontract").

Contractor and Subcontractor agree as follows:

**ARTICLE 1: THE SUBCONTRACT DOCUMENTS**

Subcontractor shall perform all work and furnish all supervision, labor, materials, plant, scaffolding, tools, equipment, supplies and other things necessary for the construction and completion of the Work described in Exhibit A hereto and work incidental thereto (hereinafter, "the Work"), in strict accordance and full compliance with the terms of the Prime Contract (whose documents are hereby incorporated by reference) and this Subcontract, and to the satisfaction of Contractor, the Prime Contractor, and the Owner. The Subcontract Documents consist of (1) this agreement and its Exhibits; (2) the First-Tier Subcontract, (3) the Prime Contract; (4) Modifications issued subsequent to the execution of the Prime Contract, whether before or after the execution of this Subcontract; (5) other documents listed in Exhibit C of this Subcontract, and (6) Modifications to this Subcontract issued after its execution. These documents (hereinafter "the Subcontract Documents") form this Subcontract, and are as fully a part of the Subcontract as if attached hereto or reiterated herein. The Subcontract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Subcontract Documents, other than Modifications issued subsequent to the execution of this Subcontract, appears in Exhibit C. This Subcontract may be amended or modified only by a Modification. The Subcontract Documents shall not be construed to create a contractual relationship of any kind between any persons or entities other than Contractor and Subcontractor. The Subcontract includes the following exhibits:

Exhibit "A" – Scope of Work
Exhibit "B" – Contract Sum and Unit Prices
Exhibit "C" – List of Contract Documents, Modifications and accepted alternates
Exhibit "D" – Insurance Requirements
Exhibit "E" – Special Provisions
Exhibit "F" – Special Stipulation

**ARTICLE 2: SUBCONTRACT SUM**

Contractor shall pay Subcontractor in current funds for performance of the Subcontract the Subcontract Sum stated in Exhibit B hereto, subject to additions and deductions as provided in this Subcontract.

**ARTICLE 3: MUTUAL RIGHTS AND RESPONSIBILITIES**

To the extent that the provisions of the Prime Contract and the First-Tier Subcontract apply to the Work of the Subcontractor, Subcontractor shall assume toward Contractor all obligations and responsibilities which Contractor, under those documents, assumes toward the Prime Contractor and the Owner. Contractor shall have the benefit of all rights, remedies and redress against Subcontractor which the Prime Contractor or the Owner under



PLEASE INITIAL




those documents has against Contractor. Where a provision of such documents is inconsistent with a provision of this Subcontract, Subcontractor shall perform its work in such a way as to satisfy Contractor's obligations to the Prime Contractor.

**ARTICLE 4: EXECUTION AND PROGRESS OF THE WORK**

a. Subcontractor represents that it is fully qualified to perform the Subcontract, and acknowledges that, prior to the execution of this Subcontract, it has (a) by its own independent investigation ascertained (i) the Work required by this Subcontract, (ii) the conditions involved in performing the work, and (iii) the obligations of this Subcontract and the Contract Documents; and (b) verified all information furnished by Contractor or others satisfying itself as to the correctness and accuracy of that information. Any failure by Subcontractor to investigate independently and become fully informed will not relieve Subcontractor from its responsibilities hereunder.

b. Subcontractor shall commence work within two business days after receipt from Contractor of a written notice to proceed. Subcontractor shall perform its Work according to the schedule and sequence directed by Contractor, which schedule and sequence shall be subject to change as the needs of the Project dictate without additional compensation to Subcontractor. Subcontractor shall perform and complete its Work in such sequence and schedule as facilitates Contractor's completion of all of its work in the manner and within the period required by the First-Tier Subcontract. In the event that Subcontractor's performance is delayed such that Contractor and Subcontractor are entitled to recover compensation from the Prime Contractor and/or the Owner for delay, Subcontractor shall submit its claim to Contractor in writing within two business days of its occurrence. The Work of this Subcontract shall be substantially completed in time to meet Contractor's obligation of timely completion under the First-Tier Subcontract. Time is of essence of this Subcontract. No extension of time will be valid without Contractor's written consent given after claim is made by Subcontractor.

c. Subcontractor shall supervise and direct Subcontractor's Work, and shall cooperate with Contractor in scheduling and performing the Work in order to avoid conflict, delay in or interference with the Work of Contractor, the Prime Contractor, other subcontractors or Owner's own forces. Subcontractor shall participate in the preparation of coordinated drawings in areas of congestion, specifically noting and advising Contractor of potential conflicts between the Work of Subcontractor and that of Contractor, other subcontractors or the Owner's own forces. Contractor may order Subcontractor in writing to suspend, delay or interrupt the Work of this Subcontract in whole or in part for such period of time as Contractor may determine.

d. Subcontractor shall promptly submit Shop Drawings, Product Data, Samples and similar submittals required by the Subcontract Documents with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of Contractor or other subcontractors.

e. Subcontractor shall furnish to Contractor periodic progress reports of the Work as mutually agreed, including information on the status of materials and equipment which may be in the course of preparation, manufacture or transit.

f. Subcontractor agrees that Contractor will have the authority to reject and to require correction of Work of Subcontractor which does not conform to the Subcontract Documents.

g. Subcontractor shall take necessary precautions to protect properly the Work of other subcontractors from damage caused by operations under this Subcontract.

**ARTICLE 5: PROGRESS PAYMENTS**

a. Based upon applications for payment submitted to Contractor by Subcontractor, corresponding to applications for payment submitted by Contractor to the Prime Contractor, Contractor shall make progress payments on account of the Subcontract Sum to Subcontractor as provided below and elsewhere in the Subcontract Documents.

b. The period covered by each application for payment shall be one calendar month ending on the last day of the month. Provided an application for payment is received by Contractor not later than the 20th day of a month, Contractor shall include Subcontractor's Work covered by that application in the next application for payment which

after the application date fixed above, Subcontractor's Work covered by it shall be included by Contractor in the next application for payment submitted to the Prime Contractor. Contractor shall pay Subcontractor each progress payment within ten working days after Contractor receives payment from the Owner. Payment by the Prime Contractor to Contractor for work, for changes and for claims and other bases of compensation shall be a condition precedent to Contractor's obligation to pay the Subcontractor therefore. This condition precedent shall apply equally with regard to any claim by Subcontractor or any person working under Subcontractor against any surety under a bond provided to the Project by Contractor or the Prime Contractor. Subcontractor acknowledges that its right to recover payment in connection with this Subcontract depends upon occurrence of this condition precedent.

c. Each application for payment shall be based upon a schedule of values submitted by the Subcontractor in accordance with the Subcontract Documents. The schedule of values shall allocate the entire Subcontract Sum among the various portions of the Subcontractor's Work and shall be prepared in such form and supported by such data to substantiate its accuracy as Contractor may require. This schedule, unless objected to by Contractor, shall be used as a basis for reviewing Subcontractor's applications for payment. In the event Contractor disapproves said breakdown, Contractor shall establish a reasonable breakdown, which shall serve as the basis for partial payments. Applications for payment submitted by Subcontractor shall indicate the percentage of completion of each portion of Subcontractor's Work as of the end of the period covered by the application for payment.

d. Partial payments shall be due Subcontractor in the amount of 90% of the work in place as shown by the application for payment, which work has been approved by Contractor and the Prime Contractor, and for which payment has been made to Contractor by the Prime Contractor. If the Prime Contract permits partial payment for materials stored on-site or off-site, such payments shall be made to Subcontractor in the amounts and under the standards set forth in the Contract Documents for stored materials which have been approved by Contractor, the Prime Contractor and the Owner, but only after Contractor's receipt of payment therefore from the Prime Contractor.

e. Subcontractor shall ensure that all lower-tier subcontractors and employees at all times are timely paid all amounts due in connection with the performance of this Subcontract. Subcontractor shall pay for all materials; equipment and labor used in connection with the performance of this Subcontract through the period covered by previous payments received from Contractor, and shall furnish satisfactory evidence, when requested by Contractor, to verify compliance with this obligation. After the first partial payment hereunder, Contractor shall the have the right to withhold any subsequent partial payments until Subcontractor submits evidence satisfactory to Contractor that all amounts owed in connection with performance of this Subcontract have been paid. Further, Subcontractor agrees that Contractor, after giving notice to Subcontractor, may pay all persons who have not been paid the monies due them in connection with this Subcontract whether or not a lien has filed, unless Subcontractor, within 10 days of receipt of notice or such shorter period as the Contractor finds necessary to meet its obligations to the Prime Contractor and the Owner demonstrates that such sums are not due and provides Contractor adequate security.

f. In the event that Contractor pays or indemnifies any person in accordance with this Subcontract, Subcontractor shall immediately reimburse Contractor for the full cost thereof. Contractor may withhold from any payment otherwise due any sum necessary to obtain such reimbursement. Subcontractor shall, to the extent that Contractor has not received said amounts pursuant to withholding, pay said amounts to Contractor upon demand. Subcontractor shall also immediately reimburse Contractor for any amounts paid under Contractor's payment bond in connection with this Subcontract and indemnified by Contractor.

g. All material and work incorporated into the Project or for which partial payment has been made shall become the property of Contractor, or, if the Contract Documents so provide, the property of the Owner; however, this provision shall not relieve Subcontractor from the sole responsibility and liability for all work and materials upon which payments have been made until final acceptance thereof by the Owner.

h. Contractor may withhold amounts otherwise due under this Subcontract or any other agreement between the parties to cover the Contractor's reasonable estimate of any loss or liability the Contractor has incurred or may incur for which Subcontractor may be responsible under this Subcontract or any other agreement between the parties. Appropriate adjustments to withholdings shall be made when the exact amounts owed are determined.





i. Final payment, subject to withholdings permitted hereunder, shall not be due until after the last of the following to occur: Subcontractor's work has been completed and accepted by the Prime Contractor and the Owner, the entire Project is complete, all final payment prerequisites under the Subcontract Documents have been satisfied, satisfactory proof of payment of all amounts owed by Subcontractor in connection with this Subcontract has been provided, Subcontractor has satisfied its obligations under this Subcontract with regard to liens and claims against bonds, and Contractor has been paid in full for the entire project. Payment by the Prime Contractor to Contractor for work, for changes and for claims and other bases of compensation shall be a condition precedent to Contractor's obligation to pay Subcontractor therefore. This condition precedent shall apply equally with regard to any claim by Subcontractor or any person working under Subcontractor against any surety under a bond provided to the Project by Contractor or the Prime Contractor. Subcontractor acknowledges that its right to recover payment in connection with this Subcontract depends upon occurrence of this condition precedent.

j. Subcontractor shall cooperate fully with Contractor in securing payment to Contractor by the Prime Contractor including but not limited to providing such supporting documentation as Contractor may require.

k. At any time all monies due Contractor from the Prime Contractor are not paid, Contractor shall in its sole discretion apportion the nonpayment equitably and reduce the payments otherwise due Subcontractor accordingly. Such reductions shall continue until Contractor is paid all monies due.

l. Neither partial nor final payment shall constitute or imply acceptance of work or materials. Acceptance of the Work shall occur only by means of the Owner's acceptance of the Work under the terms of the Prime Contract.

**ARTICLE 6: CHANGES IN THE WORK**

The Owner and the Prime Contractor may make changes in the Work by issuing Modifications to their respective contracts. Upon receipt of such a Modification affecting this Subcontract issued subsequently to the execution of the Subcontract, Contractor shall promptly notify Subcontractor of the Modification. Unless otherwise directed by Contractor, Subcontractor shall not thereafter order materials or perform Work which would be inconsistent with the changes made by the Modifications to the First-Tier Subcontract.

b. Subcontractor may be ordered in writing by Contractor, without invalidating this Subcontract, to make changes in the Work or the manner of its performance within the general scope of this Subcontract consisting of additions, deletions or other revisions, including those required by Modifications to the Prime Contract issued subsequent to the execution of this Agreement, the Subcontract Sum and the Subcontract Time being adjusted accordingly. Subcontractor, prior to the commencement of such changed or revised Work, shall submit promptly to Contractor a written claim for adjustment to the Subcontract Sum and Subcontract Time for such revised Work in a manner consistent with requirements of the Subcontract Documents.

c. Subcontractor shall make all claims promptly to the Contractor for additional cost, extension of time and damages for delays or other causes in accordance with the Subcontract Documents. A claim which will affect or become part of a claim which Contractor is required to make under the First-Tier Subcontract or the Prime Contract within a specified time or in a specified manner shall be made in such a way as to permit Contractor to satisfy the requirements of those contracts. Such claims shall be received by Contractor not less than three working days preceding the time by which Contractor's claim must be made. Failure of Subcontractor to make such a timely claim shall bind Subcontractor to the same consequences as those to which Contractor is bound.

**ARTICLE 7: SUBCONTRACTOR'S LIABILITY**

a. Subcontractor assumes the entire responsibility and liability for all work, supervision, labor and materials provided hereunder, whether or not erected in place, and for all plans, scaffolding, tools, equipment, supplies and other things provided by Subcontractor until final acceptance of the Work by the Owner. In the event of any loss, damage or destruction thereof from any cause, Subcontractor shall be liable therefore, and shall repair, rebuild and make good said loss, damage or destruction at Subcontractor's cost.

b. If Subcontractor defaults or neglects to carry out the Work in accordance with this Agreement and fails within three working days after receipt of written notice from Contractor to commence and continue correction of





such default or neglect with diligence and promptness, Contractor may, after three days following receipt by Subcontractor of an additional written notice, and without prejudice to any other remedy Contractor may have, make good such deficiencies and may deduct the reasonable cost thereof from the payments then or thereafter due Subcontractor.

c. Subcontractor shall be liable to Contractor for all costs that Contractor incurs as a result of Subcontractor's failure to perform this Subcontract in accordance with its terms. Subcontractor's failure to perform shall include the failure of its lower-tier subcontractors to perform. Subcontractor's liability shall include but not be limited to: (1) damages and other delay costs payable by Contractor to the Prime Contractor or the Owner, (2) Contractor's increased costs of performance, such as extended overhead and costs resulting from Subcontractor-caused delays or improper Work, (3) warranty and rework costs, (4) liability to third parties, (5) excess reprocurement costs, (6) consultants' fees, and (7) attorneys' fees and related costs.

d. If any person (including employees of Subcontractor) suffers injury or death or any property is damaged, lost or destroyed as a result in whole or in part of Subcontractor's acts or omissions, whether or not involving negligence of Subcontractor, his employees, agents or lower-tier subcontractors, Subcontractor assumes the liability therefore and shall indemnify and hold harmless therefrom the Owner, the Prime Contractor and Contractor and their agents, servants, and employees. With respect to any action involving Subcontractor's acts or omissions, Subcontractor shall pay as they are incurred all costs and expenses, including attorney's fees, of Contractor's defense, and shall satisfy all judgments entered against Contractor and all other indemnified parties.

e. Contractor's equipment will be available to the Subcontractor only at the Contractor's discretion and on mutually satisfactory terms. In the event that Subcontractor or any of its agents, employees, suppliers, or lower-tier subcontractors utilize any machinery, equipment, tools, scaffolding, hoists, lifts or similar items belonging to or under the control of Contractor, Subcontractor shall be liable to Contractor for any loss or damage (including personal injury or death), which may arise from such use.

f. Subcontractor's assumption of liability is independent from and not limited in any manner by Subcontractor's insurance coverage obtained pursuant to this Subcontract, or otherwise. All amounts owed by Subcontractor to Contractor as a result of the liability provisions of the Subcontract shall be paid upon demand.

**ARTICLE 8: LAWS, PERMITS, FEES**

Subcontractor shall give notices and comply with laws, ordinances, rules, regulations and orders of public authorities bearing on performance of the Work of this Subcontract. Subcontractor shall secure and pay for permits and governmental fees, licenses and inspections necessary for proper execution and completion of Subcontractor's Work, the furnishing of which is required of Contractor by the First-Tier Subcontract. Subcontractor shall comply with federal, state and local tax laws, social security acts, unemployment compensation acts and workers' compensation acts insofar as applicable to the performance of this Subcontract.

**ARTICLE 9: SAFETY**

Subcontractor shall take reasonable safety precautions with respect to performance of this Subcontract, shall comply with safety measures initiated by Contractor and with applicable contractual provisions, laws, ordinances, rules, regulations and orders of public authorities for the safety of persons and property in accordance with the requirements of the Subcontract Documents. Subcontractor shall report to Contractor within three days any injury to an employee or agent of Subcontractor which occurred at the site.

**ARTICLE 10: CLEANING UP**

Subcontractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations performed under this Subcontract. If Subcontractor fails to clean up as provided in the Subcontract Documents, Contractor may charge Subcontractor for Subcontractor's appropriate share of cleanup costs.

**ARTICLE 11: WARRANTY**

Subcontractor warrants its work hereunder to Contractor on the same terms, and for the same period, as Contractor warrants the work to the Prime Contractor and the Owner under the Contract Documents, and, with



CD



respect to Subcontractor's Work, Subcontractor shall assume all warranty obligations and responsibilities of Contractor under the Contract Documents.

**ARTICLE 12: INDEMNIFICATION**

a. To the full extent permitted by law, Subcontractor shall indemnify and hold harmless the Owner, the Prime Contractor, Contractor, their respective agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of Subcontractor's Work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of Subcontractor, Subcontractor's subcontractors, anyone directly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person indemnified pursuant to this paragraph. With the respect to Subcontractor's Work, Subcontractor shall further assume toward Contractor all obligations of indemnification that Contractor assumes toward the Prime Contractor, the Owner and others under the contracts between those parties.

b. In claims against any person or entity indemnified under the foregoing paragraph by an employee of Subcontractor, Subcontractor's sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation shall not be limited by a limitation on the amount or type of damages, compensation or benefits payable by or for Subcontractor or Subcontractor's sub-subcontractors under workers' compensation acts, disability benefit acts or other employee benefit acts.

c. The Subcontract price includes one hundred dollars ($100.00) as specific consideration for indemnification under this Subcontract.

**ARTICLE 13: TERMINATION, SUSPENSION**

a. If Subcontractor persistently or repeatedly fails or neglects to carry out the Work in accordance with the Subcontract Documents or otherwise to perform in accordance with this Subcontract and fails within seven days after receipt of written notice to commence and continue correction of such default or neglect with diligence and promptness, Contractor may, after seven days following receipt by Subcontractor of an additional written notice and without prejudice to any other remedy that Contractor may have, terminate the Subcontract and finish Subcontractor's Work by whatever method Contractor may deem expedient. If the unpaid balance of the Subcontract Sum exceeds the expense of finishing Subcontractor's Work and other damages incurred by Contractor, such excess shall be paid to Subcontractor. If such expense and damages exceed such unpaid balance, Subcontractor shall pay the difference to Contractor.

b. Contractor may suspend or terminate the Work for its convenience and without cause upon written notice. Upon receipt of written notice of suspension or termination Subcontractor shall:

1) cease operations as directed by Contractor in the notice;
2) take actions necessary, or that Contractor may direct, for the protection and preservation of the Work; and
3) in the case of termination, except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further sub-subcontracts and purchase orders.

c. In case of the termination for Contractor's, the Prime Contractor's, or the Owner's convenience, Subcontractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work executed, but Subcontractor shall not be entitled to overhead, profit, or other compensation for work not executed. Subcontractor's recovery shall be further limited to Subcontractor's share of Contractor's recovery from the Prime Contractor. Contractor's recovery from the Prime Contractor shall be a condition precedent to any obligation on Contractor's or any surety's part to compensate Subcontractor for a suspension or termination for the Prime Contractor's or the Owner's convenience.







**ARTICLE 14: ASSIGNMENT OF THE SUBCONTRACT**

In the event of termination of the First-Tier Subcontract by the Prime Contractor, Contractor may assign this Subcontract to the Prime Contractor, with the Prime Contractor's agreement, subject to the provisions of the First-Tier Subcontract and to the prior rights of the surety, if any, obligated under bonds relating to that contract. In such event, the Prime Contractor shall assume Contractor's rights and obligations under the Subcontract Documents. Subcontractor shall not assign the Work of this Subcontract without the written consent of Contractor, nor further subcontract the whole or portions of this Subcontract without written notification to Contractor when such notification is requested by Contractor.

**ARTICLE 15: LIENS**

a. In the event that liens are filed by anyone in relation to the labor, material or equipment furnished pursuant to this Subcontract, Subcontractor agrees to have the same discharged by posting a bond with the appropriate authorities or otherwise within three (3) days of notice. In the event that such a lien is not so discharged, Contractor itself may discharge the lien, holding Subcontractor responsible for all costs and obligations incurred. In the event of a claim on the part of any person providing labor, materials or equipment to Subcontractor against any surety bond provided to the Project, Subcontractor shall immediately take all such steps as are necessary to free the bond of such claim. If the claim is not so discharged as against the bond, Contractor itself may take steps to do so, holding Subcontractor responsible for all costs and obligations incurred.

b. Subcontractor shall, as part of each request for partial payment other than the initial request, furnish claim releases and lien waivers executed by itself and all persons performing work or furnishing materials under Subcontractor, with respect to all work performed and material supplied through the date of the immediately proceeding request for partial payment.

c. Prior to final payment, Subcontractor shall provide to Contractor a release of its liens and claims and all liens and claims of all persons furnishing labor, materials and equipment for the performance of this Subcontract, and satisfactory evidence that there are no other liens and/or claims whatsoever outstanding against the work relating to this Subcontract.

**ARTICLE 16: LABOR**

Should any worker performing Work covered by this Subcontract engage in any strike or other work stoppage or cease to work due to picketing or a labor dispute of any kind, such circumstances shall, notwithstanding any provision of the Contract Documents, be deemed a failure to perform by Subcontractor. Subcontractor understands that Contractor, the Prime Contractor, other subcontractors and/or other contractors of the Owner may employ both union and non-union workers on the project. Subcontractor agrees, in the event of a labor dispute, to use all means available under law to cure the dispute as quickly as possible so as to cause the minimum of delay to the project. In the event Subcontractor fails to act expeditiously, Contractor may exercise any rights and remedies that it may have under the law and Subcontractor will indemnify Contractor for any cost incurred.

**ARTICLE 17: INSURANCE AND BONDS**

a. Subcontractor shall purchase and maintain insurance of the types of coverage and limits of liability shown on Exhibit D attached hereto. When requested in writing, Subcontractor shall provide Contractor with copies of the property and equipment policies and other insurance policies in effect for the Project. Subcontractor shall provide insurance for the full value of stored materials.

b. Subcontractor's insurance shall name as additional insured the Owner, the Prime Contractor, Contractor and any and all other persons which Contractor by its First-Tier Subcontract is required to so name. Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of Subcontractor's Work until the Prime Contract permits such coverages to be terminated.

c. Certificates of insurance acceptable to Contractor shall be filed with Contractor prior to commencement of Subcontractor's Work. Subcontractor shall not be entitled to receive a first progress payment unless and until the certificates of insurance have been provided. These certificates and the insurance policies required by this Subcontract shall contain a provision that coverages afforded under the policies shall not be canceled or allowed to expire until at least 30 days' prior written notice has been given to Contractor. If any of the insurance coverages are required to remain in force after final payment, an additional certificate evidencing continuation of such coverage

shall be submitted with the final application for payment. If any information concerning reduction of coverage is not furnished by the insurer, it shall be furnished by Subcontractor with reasonable promptness according to **Subcontractor's information and belief.**

d. Immediately upon execution of this Subcontract, Subcontractor shall at its expense furnish to Contractor performance and payment bonds in a form and with a surety acceptable to Contractor, each in the full amount of this Subcontract, unless this requirement is waived by Contractor in writing. If, at the time of execution of this Subcontract, Subcontractor has not been required to furnish bonds or if Contractor desires Subcontractor to provide additional bond coverage, Contractor may, at any time upon written request, instruct Subcontractor to provide within ten (10) days performance and payment bonds in a form and from a surety acceptable to Contractor, in an amount up to the then current full value of this Subcontract. In this event, Contractor will reimburse Subcontractor for the reasonable bond premium. The payment of any incremental increase in the cost of bonds existing as a result of changes in the work shall be the responsibility of Subcontractor **and may be included as a part of Subcontractor's** price quotation for proposed changes.

e. Subcontractor waives all rights of subrogation against (1) Contractor and any of its other subcontractors, sub-subcontractors, agents and employees, (2) the Prime Contractor and any of its other subcontractors, sub-subcontractors, agents and employees, and (3) the Owner, separate contractors, and any of their subcontractors, sub-subcontractors, agents and employees for damages caused by fire or other causes of loss to the extent covered by property insurance applicable to the Work, except such rights as they may have to proceeds of such insurance held by the Owner. Subcontractor shall require of Subcontractor's sub-subcontractors, agents and employees, by appropriate agreements, written where legally required for validity, similar waivers in favor of the parties **enumerated herein. Subcontractor's insurance policies shall provide such waivers of subrogation by endorsement or** otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, or did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

**ARTICLE 18: DISPUTES**

a. In the event of any dispute under this Subcontract, Contractor shall issue a decision which shall be followed by Subcontractor, without interruption, deficiency, or delay. **Subcontractor's notice of any claim for relief must be given in writing not later then ten (10) days after Subcontractor's knowledge of the basis for the claim and** within sufficient time to allow Contractor to give notice to the Prime Contractor and the Owner under the First-Tier Subcontract Documents.

b. In case of any dispute between Contractor and Subcontractor in any way relating to or arising from any act or omission of the Prime Contractor or the Owner or involving the Contract Documents, Subcontractor agrees to be bound to Contractor as Contractor is bound to the Prime Contractor by the terms of the applicable contract documents, and to be bound by decisions or determinations made thereunder by the party, board or court so authorized by contract or by law, whether or not Subcontractor is a party to such proceedings. In case of such a dispute, Subcontractor will comply with all provisions of the Subcontract Documents, allowing a reasonable time for Contractor to analyze and forward to the Prime Contractor any required communications or documents. Contractor **will present to the Prime Contractor in Contractor's name Subcontractor's claims and will answer the claims of others involving Subcontractor's work, as Contractor is permitted to do by the applicable contractual provisions.** Contractor will further invoke on behalf of Subcontractor those provisions of the First-Tier Subcontract Documents for determining disputes. Nothing herein shall require Contractor to certify a claim under a government contract when it cannot do so in good faith. If such a dispute is prosecuted or defended by Contractor, Subcontractor at its own expense agrees to furnish all documents, statements, witnesses, and other information required by Contractor and to pay to Contractor as they are incurred all costs incurred in connection with the dispute, including without **limitation attorney's fees. The Subcontract price shall be adjusted by Subcontractor's allocable share of any** recovery thus obtained by Contractor. Payment by the Prime Contractor to Contractor for claims and other bases of **compensation shall be a condition precedent to Contractor's obligation to pay Subcontractor therefore. This** condition precedent shall apply equally with regard to any claim by Subcontractor or any person claiming under Subcontractor against any surety under a bond provided to the Project by Contractor or the Prime Contractor. Subcontractor acknowledges that its right to recover payment in connection with this Subcontract depends upon occurrence of this condition precedent.





c. Any dispute between Contractor and Subcontractor that Contractor does not submit for resolution with the Prime Contractor shall, at Contractor's sole option, be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. The locale of any such arbitration shall be Washington, D.C. The foregoing agreement to arbitrate at Contractor's option shall be specifically enforceable in any court of competent jurisdiction. The decision rendered by the arbitrator(s) shall be final and judgment may be entered upon it in accordance with applicable law in any court of competent jurisdiction. Upon its request, the Contractor shall be entitled to consolidation or joinder of any arbitration or litigation proceeding involving Subcontractor with related proceedings involving other parties. If Contractor notifies Subcontractor that Contractor contends that any dispute arising under this Subcontract involves the Prime Contractor or the Owner as well as Contractor and Subcontractor, any arbitration or litigation between Contractor and Subcontractor shall be stayed until all disputes procedures of the First-Tier Subcontract have been completed. In the event of any lawsuit under this clause, DUE TO THE SPECIALIZED NATURE OF CONSTRUCTION LITIGATION EACH PARTY HEREBY WAIVES ITS RIGHT TO A TRIAL BY JURY. For purposes of litigation Subcontractor hereby consents to jurisdiction and venue in Maryland.

d. No arbitration arising out of or relating to the Project shall include, by consolidation, or joinder, or in any other manner, Contractor, except by its own election, in arbitration with any party other than Subcontractor.

e. Contractor and Subcontractor waive any right to recover against each other for consequential damages arising out of or relating to this Subcontract, including without limitation any consequential damages due to either party's termination.

**ARTICLE 19: MERGER, DEFINITIVE STATEMENT OF TERMS**

The parties' agreement to a subcontract for purposes of the Project shall be expressed only by means of their respective signatures below. If for any reason Subcontractor should fail to sign this Subcontract, any conduct by Subcontractor that recognizes the existence of a subcontract pertaining to the Project shall constitute Subcontractor's acceptance of this Subcontract form and all of its terms and conditions. Any terms proposed by Subcontractor which add to, vary from, or conflict with the terms herein are hereby objected to by Contractor. Any such proposed terms shall be void, and the terms herein shall constitute the complete and exclusive statement of the terms and conditions of the subcontract between the parties. If this Subcontract has been issued by Contractor in response to an offer, and if any of the terms herein are additional to or different from any terms of such offer, then the issuance of this Subcontract shall constitute an acceptance of such offer subject to the condition that Subcontractor assent to such additional and different terms herein. This Subcontract constitutes the entire agreement between Contractor and Subcontractor with respect to the Project. This Subcontract may be modified only by a written instrument executed by the authorized representatives of both parties.

| | |
|---|---|
| CONTRACTOR *(signature)* | SUBCONTRACTOR *(signature)* |
| | David P. Gerlach/President/CEO |
| *Printed Name and Title* | *Printed Name and Title* |

<u>EXHIBIT "A"</u>

OLD STATE BUILD-OUT

**DUCTWORK**

The Work includes, but is not limited to the following, which is provided as a general guide and is not intended to represent each and every item necessary to perform the work. It is the subcontractor's responsibility to provide a complete Scope of Work.

The Subcontractor will furnish all labor, material, equipment, plant and services necessary to furnish and install all <u>FABRICATED DUCTWORK, PREFABRICATED DUCTWORK, SHEET METAL SPECIALITIES, GRILLS, REGISTERS AND DIFFUSERS</u> and related work in accordance with the agreement between the Owner and Contractor, Project Drawings, and Specifications as listed in Schedule C as prepared by Karm Chapman & Twohey: and DNC Architect., with reference to the following:

Division 1 –General Requirements
Specifications:

SECTION 15840 SHOP FABRICATED DUCTWORK
SECTION 15845 PREFABRICATED DUCTWORK
SECTION 15860 SHEET METAL SPECIALITIES
SECTION 15870 GRILLS, REGISTERS AND DIFFUSERS

DIVISION 15 MECHANICAL (as applicable)

In addition to all other requirements, this subcontract includes the following:

1. This document, together with Contract Documents that includes Drawings, Applicable Codes, and Specifications referenced herein, covers all work required of Subcontractor except items specifically excluded. All items not excluded and necessary to make the work involved complete and functional are part of subcontractor's work.

2. Provide coordinated drawings in "Auto Cad" format. Subcontractor shall take the lead in the development of the drawings Included in the SOW. Special attention should be given to insure that no work is routed through ductwork. CAD architectural and structural background files will be made available to the subcontractor. In the event there is a cost for the Auto Cad files, the cost will be for the subcontractor's account.

3. Commissioning as applicable to the work included herein

4. All sheet metal ductwork which includes:

   a. Sheet metal.
   b. Spiral pipe and fittings.
   c. Black iron.
   d. Stainless steel.
   e. Fire dampers, as shown.
   f. Access doors.
   g. Sound liner.
   h. Grilles registers and diffusers
   i. Slot diffusers and linear slot diffusers.
   j. Auxiliary drain pans, as shown.





k. Spin-ins, round flexible duct insulated.
l. Duct mounted attenuators.
m. Backdraft dampers, duct mounted, in addition will install dampers provided with fans or other equipment.
n. Generator flue and stack.
o. Leak test for new ductwork.
p. Sealing ductwork.
q. Security bars.
r. Angle iron leg support for duct installed on roof, pitch pockets will be furnished and installed by others.
s. Duct identification for new work only.
t. Daily trash removal for work by this Subcontract to site dumpster provided by others.
u. Provide dimensioned drawing for opening in walls.
v. Cap and seal existing ductwork at point of demolition.
w. Sound attenuation duct mounted.
x. Exhaust, relief and intake Vents set only provided by others.
y. Volume Dampers

5. The Subcontractor will provide two (2) men for 1 (1) day to help install Air Handling Units.

   The contractor and the rigging subcontractor. Crane time for this work will be furnished by the rigging subcontractor. The cost for labor and the crane will be for account of the contractor and the rigging subcontractor.

6. The subcontractor will receive items listed on each floor and will install these items. The items are as follows:
   a. Humidifiers. (Duct Mounted)
   b. Hot water and steam Coils.
   c. VAV boxes, coils and sound attenuators.
   d. Fans.
   e. Modulating dampers.
   f. Filters and housings.
   g. Backdraft dampers as scheduled.
   h. Smoke detectors duct mounted.
   i. Automatic Dampers.
   j. Exhaust, relief and intake vents

   Subcontractor will forward copies of the packing lists and receiving reports to the contractor immediately upon receipt of these materials.

7. Training, if required, for items listed in the contract documents.

8. All trash, dirt and debris will be cleaned out of the installed ductwork on a daily basis and the ductwork ends will be sealed. In the event duct cleaning is required due sole to the negligence of the Subcontractor, the Subcontractor will clean the interior of the ductwork .

9. Warranty in accordance with the specifications.

10. The following clarifications are included as follows:

   a. The following items are excluded from this subcontract:

      1. Cut, patch and painting on premium time other than required to maintain the approved construction schedule.
      2. Architectural access doors.
      3. Ceiling removal and replacement.







4. Architectural curbs.
5. Leak testing for existing ductwork.
6. Waterproofing and roofing.
7. Insulation.
8. Air balance.
9. Steel frames to support generator exhaust flue pipe, Amendment 2, Sketch No. SKM-7S5.2.
10. Stack enclosures and structural steel.
11. Steel supports for CRAC and power ventilator fan units.
12. X-Raying for opening.
13. Valve packages for induction unit.
14. Convectors complete.
15. Architectural shafts and chases.
16. *Crane and rigging for equipment.*
17. Fire safing ductwork.
18. Ductwork for exterior chases as references on drawings 9-M-401 & 402.
19. Architectural ceilings, architectural registers and grilles.
20. Scaffolding for installation of the vertical stacks in Option 1.

a. Architectural louvers are furnished and installed by others. The subcontractor will connect ductwork to these louvers.

b. Kitchen hood, dishwasher hood and equipment are installed by others. The subcontractor will connect ductwork to these items.

c. Demolition will be by others.

d. The subcontractor will disconnect the ductwork, induction boxes with bell mouth fittings, supply plenums, fire dampers and conical inlets. The subcontractor will mark and identify these items and remove them for either salvage or for reuse. The subcontractor will store and protect these items for installation as required.

e. Temporary HVAC for Historical and non-Historic areas. The subcontractor will assist with monitoring proper temperature for this space. Any temporary duct required will be furnished and **installed by this subcontractor and the cost for this work will be for the subcontractor's account.**

EXHIBIT "B"

**LUMP SUM PRICES**

DUCTWORK........................................................................................$ 1,553,000.00

ADD ALTERNATE

The following ADD Alternate may be exercised at the sole option of the Contractor. If so exercised, it will be confirmed by written Change Order to this Subcontract. NO CHANGE Impacts do require a change order

**N/A**

**Additional UNIT PRICES**

The following unit prices / add alternates are a part of this Subcontract, and shall be used to adjust the Subcontract price for changes in work as directed by the Owner/Architect or Contractor in strict accordance with the Contract Documents. These unit prices / add alternates include ALL items of cost including, but not limited to, labor, material, equipment, tools, supervision, jobsite and home office overhead, profit, and all other necessary services and facilities to prosecute the work. For unit price work applicable quantities shall be based upon either (1) agreed upon estimates, or (2) actual measured in-place work. The net change to the Subcontract price, increased or decreased, shall represent net change to quantity multiplied by the applicable unit price.

**Unit Price No. 24 – Flexible Ductwork** - The subcontractor will furnish and install flexible ductwork as follows;

Unit Price 24a - 5'-0 X 6-Inch Dia. Flex Duct
ADD......(Based on quantity of 20ea)............................................$ 40.00 Each

Unit Price 24b - 5'-0 X 8-Inch Dia. Flex Duct
ADD......(Based on quantity of 40ea)............................................$ 42.00 Each

Unit Price 24c - 5'-0 X 12-Inch Dia. Flex Duct
ADD......(Based on quantity of 30ea)..... .........................................$ 49.50 Each

**Unit Price No. 25 – Induction Boxes** - The subcontractor will furnish and install ductwork to induction boxes furnished by others. Testing and balancing will be performed by others. Provisions for control items will be provided by the subcontractor. (18" **length of sheet metal with reducer and flex)**

ADD......(Based on quantity of 40ea)............................................$ 630.00 Each







EXHIBIT "C"

Date: 23 / October / 2003

Project: Old State Office Build-Out

Subcontractor's Name: CMC Sheet Metal

Subcontract No.: 300220/20XX401

Page 1 of 1

**CONTRACT DOCUMENTS**

1, The contract between the General Contractor, Sigal Construction Corporation and subcontractor , Tyler Mechanical Contracting DC dated October 24, 2003.

2. Plans and specification as prepared by Karn Charuhas & Twohey: and DNC Architect.

**DRAWINGS**

| | |
|---|---|
| Volume 1 – Architectural Drawings} | dated 7/8/03 (see sheets C-002 & C-003 for index of |
| Volume 2 – Architectural (Part 2) Drawings) & Structural | dated 7/8/03 (see sheets C-002 & C-003 for index of |
| Volume 3 – Mechanical & Plumbing Drawings} | dated 7/8/03 (see sheets C-002 & C-003 for index of |
| Volume 4 – Electrical, Telecommunications Drawings} Fire Protection & Environmental | dated 7/8/03 (see sheets C-002 & C-003 for index of |
| Electrical UPS Upgrade ESOC Computer Facility and Telephone Frame Room Relocation | dated 5/30/03 (see sheet C-1 for index of Drawings) |

**SPECIFICATIONS**

| | |
|---|---|
| Division 01 Specifications | dated 7/08/03 |
| Volume 1 - Divisions 1 through 8 | dated 7/08/03 |
| Volume 2 - Divisions 9 through 16 | dated 7/08/03 |
| Electrical UPS Upgrade ESOC Computer Facility and Telephone Frame Room Relocation | dated 5/30/03 |

**AMENDMENTS**

| | |
|---|---|
| Amendment #2 including drawings and specifications | dated 8/15/03 |

EXHIBIT "D"

## INSURANCE REQUIREMENTS

**Policies.** Before commencing the work, Subcontractor shall procure and maintain all at its own expense upon all of its operations of any of its subcontractors, suppliers or materialmen on the project hereunder, the following policies of insurance, with Tyler, General Contractor, Owner and Architect as additional insured parties.

1. Worker's Compensation and Employer's Liability Insurance. Subcontractor shall procure and maintain Worker's Compensation and Employer's liability insurance covering all of its employees in conformance with the laws of the state in which the work under the Contract Documents is to be performed, except that such insurance shall not have a limit of liability less than the following:

Employer's Liability $100,000.00 per Accident.

2. Comprehensive or Commercial General Liability. Subcontractor shall procure and maintain coverage to include all operations of the insured under the Subcontract Documents and coverage for all liability assumed hereunder with the following limits and extensions of coverage. Coverage to be on Occurrence Form. Claims made form is not acceptable. Coverage to include: Premises Operations (including X-Explosion, Collapse, and Underground coverages as applicable); Independent Contractor's Protective; Personal Injury Liability with Employee Exclusion deleted; Contractual, including special provisions for Contractor's obligation; Broad Form Property Damage, including Completed Operations with the following:

Bodily injury and Property Damage:

| | |
|---|---|
| Each Occurrence | $1,000,000.00 |
| General Aggregate | $2,000,000.00 |
| Personal Injury Liability | $1,000,000.00 |

Products and Completed Operations insurance Aggregate Limit of $1,000,000.00 shall be maintained for (2) two years after final and Subcontractor shall continue to provide evidence of such coverage to the Owner and **Tyler** on an acceptance annual basis during the aforementioned period. The Commercial General Liability Policy's General Aggregate shall be not less then $1,000,000.00 and the limits shall apply on a per Project basis.

3 Comprehensive Automobile Liability. Subcontractor shall procure and maintain Comprehensive Automobile Liability insurance covering, non-owned and hired vehicles which the following combined single limits:

Bodily Injury and Property Damage
Each Occurrence $1,000,000.00 CLS

Umbrella Liability: Subcontractor shall procure and maintain an Umbrella Liability policy with limits of $5,000,000.00.

4. Notice and Right to Pay Premiums. Subcontractor shall provide **Tyler** with copies of certificates of insurance coverage and proof of payment of all premiums. Insurance policies shall provide for notification to **Tyler** of non-payment of any premiums and give **Tyler** the right to make the premium payment hereunder within a reasonable time. Any premium payments made by **Tyler** shall be deducted from the amounts due Subcontractor under this Subcontract. Insurance policies shall provide for 30 days' prior written notice to Tyler of cancellation.







EXHIBIT "E"

**SPECIAL PROVISIONS**

1. Subcontractor agrees to coordinate its work with TYLER and other trades such that performance and completion of its work, including but not limited to, procurement, submittals, shop drawings, fabrications, delivery of equipment, testing, inspections and installation, comply with all aspects of TYLER and the Prime Contractor's schedule, as revised time to time. Subcontractor further understands that its work (a) will be performed concurrently with the work of other subcontractors on the project, (b) is dependent upon the progress of the work of other subcontractors and (c) may not be performed in a continuous manner due to the activities of other subcontractors and job conditions. The Contract Price fully accounts for and considers the fact that Subcontractor will be working under the above-referenced conditions.

2. Subcontractor shall be responsible for any and all cost of the stand-by trades and other subcontractors if Subcontractor elects to, or is required due to his failure to maintain scheduled performance, work other than normal working hours or on Saturdays, Sundays or Holidays.

3. Subcontractor will be fully responsible for any and all layout of its work. Axis lines and bench marks will be established by the Prime Contractor at each floor level, unless such work is specifically required under the Subcontract Agreement as an obligation of the Subcontractor.

4. Subcontractor is responsible for any and all scaffolding, hoisting and power connections required for its work, except as excluded.

5. Subcontractor or its duly authorized representative with decision-making authority shall attend periodic meetings as may be called by TYLER, the Prime Contractor, the Owner or the Architect.

6. Subcontractor is responsible for any changes to site conditions necessary for the performance of its work at the full cost and expense of the Subcontractor. Access will be provided to the site by the Prime Contractor, but the Subcontractor is responsible for his own method to access the site. Any damage to the streets, sidewalks, curbs, trees, utilities, adjacent properties and existing work, unless directly called for in the scope of work, that is a result of the performance of any work under the Subcontract Agreement shall be fully repaired to the satisfaction of TYLER, the Prime Contractor, and the Architect and/or authorities having jurisdiction thereof, at Subcontractor's sole cost and expense.

7. Subcontractor shall perform any and all punchlist work within fourteen (14) days of receipt of the punchlist from TYLER. If the Subcontractor fails to complete all punchlist items or notify TYLER in writing of any items which will not be complete (and the reason why they will not be completed) then TYLER shall have the right to perform all incomplete work and hold the Subcontractor responsible for all costs incurred, including TYLER's administrative costs and profit.

8. In addition the insurance requirements in Article 17 and Schedule "D" of the TYLER Subcontract Agreement, the following conditions of insurance are to be met by Subcontractor:

A. Include as "Additional Insured's":
   **(1) TYLER Mechanical Contracting, Inc – DC Division**
   **(2) Sigal Construction Corporation**
   **(3) General Services Administration, NCR**

# EXHIBIT "F"

## SPECIAL STIPULATION

The following clarifications will be included as part of this Subcontract:

1. ARTICLE 4, Paragraph b:
   Delete the following in the 3rd and 4th line "Without Additional Compensation to Subcontractor"

2. ARTICLE 4, Paragraph c:
   Add to the end of the paragraph the following:
   "Provided that if such suspension, delay, or interruption causes the Subcontractor to incur a cost impact, the Subcontractor shall be reasonably compensated. Subcontractor's obligation to adjust the schedule and sequence of its work in accordance with the needs of the project and Subcontractor's right to compensation for changes in the schedule and sequence of its work shall be co-extensive with contractors obligations and rights under the First-Tier Subcontract."

3. ARTICLE 5, Paragraph b:
   a. In the 7th line change the words " ten working days" to "seven calendar days".
   b. Delete the last three sentences and substitute the following:
   However, it is specifically understood and agreed that the payment to the Subcontractor is dependent, as a condition precedent upon TMC receiving contract payments, including retainer from the owner. Subcontractor expressly waives all right of action against TMC until said monies are actually received by TMC from the owner. Subcontractor understands and agrees that it is relying on the creditworthiness of the owner and not TMC for payment.

4. ARTICLE 5, Paragraph c:
   Add to the 6th line after Contractor "and Subcontractor".

5. ARTICLE 5, Paragraph h:
   a. Delete in line 1and 2 after Subcontract "or any other agreement between the parties".
   b. Delete in Line 2 and 3 after incurred "or may incur".
   c. Change in Line 3 after Subcontractor "May be" to "is".
   d. Delete in line 3 and 4 after Subcontractor "or any other agreement between the parties".

6. ARTICLE 5, Paragraph i:
   Delete the last three sentences and substitute the following:
   "However, it is specifically understood and agreed that the payment to the Subcontractor is dependent, as a condition precedent upon TMC receiving contract payments, including retainer from the owner. Subcontractor expressly waives all right of action against TMC until said monies are actually received by TMC from the owner. Subcontractor understands and agrees that it is relying on the creditworthiness of the owner and not TMC for payment".

7. ARTICLE 5, Paragraph k:
   Delete in Lines 1 and 2 "in its sole discretion" and substitute the following "reasonably".



PLEASE INITIAL

8. ARTICLE 7, Paragraph a:
In Line 4 after "thereof" delete the words "from any cause" and substitute caused by an event insurable by the Subcontractor under this Subcontract's insurance requirements,",

9. ARTICLE 7, Paragraph c:
Add the following paragraph C.1 between paragraph C and D:
C.1. In the absence of compensation received form the Prime Contractor, the Contractor shall be liable for losses and damages only if caused by extreme, inexcusable delays caused by the Contractor itself in the performance of the work.

10. ARTICLE 7, Paragraph d:
Add in Line 4 after "the" and before "Liability" "equitable proportional".

11. ARTICLE 12, Paragraph a:
Delete Line 8 from "Regardless ---hereunder".

12. ARTICLE 12, Paragraphs b & c:
Delete in its entirety.

13. ARTICLE 13, Paragraph b:
Add in Line 1 after "convenience" "provided there is a termination for convenience of the Contractor's Contract with the Prime Contractor or Owner".

14. ARTICLE 15 : Liens
Delete in its entirety.

15. ARTICLE 17, Paragraph d:
Add at the end of the Paragraph "Payment Bond is not included in this Subcontract".

16. ARTICLE 18, Paragraph b:
   a. Change in Line 5 "whether or not" to read "provided".
   b. Add in Line 5 after "proceeding". "or is permitted to act in contractor's name"
   c. Delete the last three sentences and substitute the following: "However, it is specifically understood and agreed that the payment to the Subcontractor is dependent, as a condition precedent upon TMC receiving contract payments, including retainer from the owner. Subcontractor expressly waives all right of action against TMC until said monies are actually received by TMC from the owner. Subcontractor understands and agrees that it is relying on the creditworthiness of the owner and not TMC for payment".
   d. Delete Paragraph c and d in their entirety.



CD

